**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 19 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NORTHWEST RESOURCE INFORMATION CENTER,<br><br>Petitioner,<br><br>v.<br><br>NORTHWEST POWER AND CONSERVATION COUNCIL,<br><br>Respondent,<br><br>NORTHWEST RIVERPARTNERS; et al.,<br><br>Respondents-Intervenors. | No.   15-71482<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Northwest Power and Conservation Council

Argued and Submitted May 11, 2017
Seattle, Washington

Before:  McKEOWN, BEA, and N.R. SMITH, Circuit Judges.

Northwest Resource Information Center (NRIC) petitions for review of the

2014 fish and wildlife program (the Program) compiled by the Northwest Power

and Conservation Council (the Council).  We have jurisdiction under 16 U.S.C. §

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

839f(e)(1)(A), (5) and affirm.  Council final actions must be upheld under the Administrative Procedure Act unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see Nw. Res. Info Ctr. v. Nw. Power Planning Council*, 35 F.3d 1371, 1383-84 (9th Cir. 1994).  Because the parties are familiar with the factual background of this case, we repeat only those facts necessary to resolve the issues raised in this petition.

NRIC first argues that the Council improperly equated its mandate under the Northwest Power Act (Power Act) with the substantive requirements of the Endangered Species Act (ESA).  NRIC's argument on this point lacks merit for two reasons.  First, the Program included numerous environmental measures distinct from those included in the Federal Columbia River Power System biological opinions (BiOps) issued pursuant to the ESA.  For example, the reintroduction of anadromous fish above the Grand Coulee Dam, as recommended by the Spokane Tribe, was included in the Program but not in the BiOps.  Numerous other measures included in the Program related to sub-basins or wildlife species other than anadromous fish also did not appear in the BiOps.  Second, the incorporation of certain flow and passage measures related to anadromous fish from the BiOps into the Program was not improper because the Power Act specifies that measures included in the Program should "complement the existing and future activities of the Federal and the region's State fish and wildlife agencies

2

and appropriate Indian tribes," which activities would include the ESA-based mitigation efforts spelled out in the BiOps. 16 U.S.C. § 839b(h)(6)(A).

NRIC next argues that the Council's decision is arbitrary and capricious because the Program fails to adopt quantitative, measureable biological objectives. NRIC is incorrect on this point because the Program includes many quantitative biological objectives. The fact that some of these quantitative biological objectives are incorporated from the BiOps does not undermine their validity or otherwise violate the Power Act. While NRIC may very well be correct that the Program would be more effective in protecting wildlife with further specific quantitative measures (as the Council itself admits), that does not mean that the Council's adoption of the Program is arbitrary and capricious.

NRIC asserts that the Council rejected certain recommendations for improper reasons. As to the Nez Perce Tribe's proposal to study further the removal of certain dams on the Snake River, the Council reasonably referenced its earlier analysis of an identical proposal considered as part of the 2010 Power Plan. This analysis concluded that removing these dams would be economically infeasible, which is a cognizable reason under the Power Act for rejecting a recommendation. 16 U.S.C. § 839b(h)(5). As to the state of Oregon and Nez Perce Tribe's proposal regarding experimental dam spill, the Program included extensive discussion about why this recommendation was rejected due to its

3

methodological problems and its potential for causing a violation of the Clean Water Act by increasing the quantities of dissolved gas in the river, both of which are cognizable reasons under the Power Act for rejecting a recommendation. 16 U.S.C. § 839b(h)(6)(A)-(B). As to the proposal by certain environmental groups for operating the John Day reservoir at minimum operating pool, the Council rejected this recommendation because it was not supported by any fish and wildlife agency or Indian tribe. While not made explicit, the lack of support by any fish and wildlife agency or Indian tribe implies that this recommendation would not have complemented their efforts, which is a cognizable basis for rejecting a recommendation under the Power Act. 16 U.S.C. § 839b(h)(6)(A), (7)(B). In sum, the Council rejected these three recommendations for valid reasons under the Power Act and it did not act arbitrarily or capriciously in so doing.

NRIC also argues that the Council's decision is arbitrary and capricious because it refused to include in the Program environmental mitigation measures up until the very point where the cost of such measures would threaten an "economical[] and reliable power supply" for the region. 16 U.S.C. § 839b(h)(5). This argument does not have merit because there is no requirement in the Power Act that the Council undertake any and every environmental mitigation step until such point as the region's economical and reliable power supply is threatened.

NRIC's final argument is that the Columbia Basin Fish Accords improperly

4

influenced the measures and objectives included in the Program, in part because a party found to breach the Accords stood to lose millions of dollars of environmental funding from the Bonneville Power Administration. While the record suggests that certain Council members initially misunderstood the legal force of the Accords as altering their responsibilities under the Power Act, the text of the Accords expressly stated that appointees to the Council "are excluded from the[ir] obligations" under the Accords "to the extent that such exclusion is necessary to enable [the] appointees to perform their responsibilities under the [Northwest Power Act]." *See* Idaho and Montana Accords, §§ IV.A.2.e. Despite some initial misunderstanding, the record establishes that the Council's staff repeatedly briefed Council members on the proper bases for including or rejecting recommendations. The record does not suggest that any Council member rejected any particular recommendation because he or she believed that supporting such recommendation would be a breach of his or her obligations under the Accords. As such, even if certain Council members initially misunderstood their duties under the Power Act in light of provisions of the Accords, that misunderstanding at most was harmless error as the Council corrected this misunderstanding and the record does not establish that this misunderstanding altered the ultimate content of the Program. *See Nw. Res. Info. Ctr., Inc. v. Nw. Power & Conservation Council*, 730 F.3d 1008, 1020-21 (9th Cir. 2013).

5

**PETITION DENIED**.